**WILLEMIJN HOUDSTERMAATSCHAA-PIJ BV, A Corporation of the Netherlands Weena 723, 3001 GD Rotterdam, The Netherlands, Plaintiff,**

v.

**APOLLO COMPUTER INC., 330 Billerica Road, Chelmsford, Massachusetts 01824, Defendant.**

**Civ. A. No. 88–109–JRR.**

United States District Court, D. Delaware.

Feb. 17, 1989.

---

Jeffrey B. Bove, of Connolly, Bove, Lodge & Hutz, Wilmington, Del. (George Vande Sande, Stanley B. Green, and Thomas Vande Sande, of Pollock, Vande Sande & Priddy, Washington, D.C., of counsel), for plaintiff.

Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Paul J. Hayes, and Victor B. Lebovici, of Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., of counsel), for defendant.

ROTH, District Judge.

## FINDINGS OF FACT

This is an action for patent infringement. Plaintiff ("Willemijn") alleges that products sold by Defendant ("Apollo") infringe United States Patents 4,293,948 (the " '948 patent") and Re. 31,852 (the " '852 reissue"). The patents at issue here relate to a data transmission system through a closed loop between master pulse equipment and subordinated terminal units.

The prosecution history in the United States Patent and Trademark Office ("PTO") leading to the March 19, 1985, reissue of the '948 patent spanned 17 years. The '948 patent issued on an application filed on October 27, 1974, which was a continuation of an abandoned application filed on August 27, 1973, which was in turn a continuation of an abandoned application filed on November 4, 1968.

Defendant has filed a counterclaim seeking a declaratory judgment that the patents relied on by plaintiff are invalid and that the defendant's products do not infringe. Neither party has requested a jury trial.

Plaintiff is a Netherlands holding company whose principal business is the licensing of these two patents and their foreign counterparts. Plaintiff's parent company is a Netherlands Antilles corporation. All directors and officers of plaintiff and its parent company are foreign corporations or individuals.

Plaintiff alleges that its operations relevant to this case are handled almost exclusively by Olof Soderblom, vice-chairman of Willemijn and inventor of the patented device. Although he lives in England, Mr. Soderblom apparently makes frequent trips to Washington, D.C., to supervise the li-

censing of the patents in suit and this litigation. Soderblom Aff. ¶ 7.

Defendant is a Delaware corporation with its headquarters and principal place of business in Massachusetts. Defendant's U.S. design and manufacturing facilities are located in Massachusetts and neighboring New Hampshire.

Defendant concedes that it is a large multinational corporation, employing approximately 4,000 people and operating 35 sales and service offices in the United States alone. At least two of these offices are located within 100 miles of this Court—in Harmons, Maryland, and King of Prussia, Pennsylvania. The King of Prussia office appears to have sold over $126,000 worth of equipment to four or five Delaware clients in 1987. Ans. to Pl.Int. No. 47. Guadagno Dep.Tr. at 46.

At issue here are five pretrial motions made by the parties: (1) defendant's motion to bifurcate the trial and stay discovery on the issue of damages; (2) defendant's motion to transfer this action to the United States District Court for the District of Massachusetts; (3) plaintiff's motion to compel production of documents withheld on the basis of privilege; (4) defendant's motion to compel the production of documents withheld on the basis of privilege; and (5) plaintiff's motion for an award of sanctions.

## CONCLUSIONS OF LAW

### I. DEFENDANT'S MOTION TO BIFURCATE THE TRIAL.

■ Defendant has moved this Court to order separate trials on the issues of liability and damages. Bifurcation in federal courts is governed by Fed.R.Civ.P. 42(b), which provides, in pertinent part:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue. . . .

In accordance with the broad language of Rule 42(b), trial courts are given a great deal of discretion when deciding motions to bifurcate. *Smith v. Alyeska Pipeline Serv. Co.*, 538 F.Supp. 977, 982 (D.Del. 1982).

It is usually not necessary to try different issues in the same case separately; however, if one of the three factors supporting bifurcation listed in Rule 42(b) is present, a court may order separate trials. 5 *Moore's Federal Practice* ¶ 42.03[1]. Since this case will not be tried to a jury, the type of prejudice referred to in the Rule is not a concern. *Id.* Moreover, because the Court finds that defendant has failed to make a sufficient showing that bifurcation would promote convenience or save the Court time, the motion to bifurcate will be denied.

As defendant points out, this Court has previously observed that patent cases often present circumstances uniquely favoring bifurcation of the liability and damages issues. *Smith*, 538 F.Supp. at 983 (quoting *Swofford v. B & W, Inc.*, 34 F.R.D. 15, 19–20 (S.D.Tex.1963), *aff'd*, 336 F.2d 406 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)). However, the fact that many patent cases are conducive to bifurcation is simply irrelevant here. Judge Latchum emphasized in *Smith* that bifurcation is a matter to be decided by the trial judge, as a result of an informed exercise of discretion, on a case-by-case basis. *Smith*, 538 F.Supp. at 982 (quoting *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir.1978)).[1] Even where bifurcation has been found to promote judicial economy, this Court has refused to order separate trials if bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. *See, e.g., H.B. Fuller Co. v. National Starch & Chem. Corp.*, 595 F.Supp. 622, 625 (D.Del.1984). In sum, a court must take into account the "overall equities" of

---

1. In *Smith,* two factors not present in this case led Judge Latchum to order separate trials. First, both parties conceded that trial of the damages issue would be lengthy and complex; and second, both issues were to be tried to a jury, and thus there was a risk of prejudice or confusion.

the case in ruling on a motion to bifurcate. *Id.*

Plaintiff argues that bifurcation would be improper for the simple reason that the issues concerned are too tightly interwoven to be tried separately. Specifically, plaintiff protests that if two trials are held, it will be required to present the same testimony and documentary evidence twice.

This Court has stated in the past that an overlapping of issues is significant to the decision whether to bifurcate. *Akzona, Inc. v. E.I. DuPont De Nemours & Co.,* 607 F.Supp. 227, 233–34 (D.Del.1984). The degree to which the issues overlap can often best be assessed by examining the amount of evidence and the number of witnesses that would be presented at both trials. *See, e.g., Organic Chemicals v. Carroll Products, Inc.,* 86 F.R.D. 468, 469 (W.D.Mich.1980).

At the heart of plaintiff's overlap argument is the issue of the admissibility of financial information regarding defendant's sales performance. Plaintiff correctly points out that evidence of defendant's "commercial success" is a relevant secondary consideration in a determination of obviousness under 35 U.S.C. section 103. *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 587 F.Supp. 1112, 1116 (D.Del.1984); and it is indisputable that such evidence will be considered by a court assessing damages. Thus, plaintiff protests, bifurcation would require it to present the same evidence at both trials.[2]

Defendant disputes the existence of any significant evidentiary overlap in this case. Citing *Paine, Webber,* 587 F.Supp. at 1116, defendant contends that the evidence of its past financial performance introduced to show commercial success will be less extensive and of a different character than that used to prove damages. Furthermore, defendant maintains that its willingness to stipulate to the commercial success of its allegedly infringing products renders the

use of evidence of its commercial success during trial on the liability issue needlessly burdensome.

The Court acknowledges that the issue of commercial success is "not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages, but rather by whether the product is, broadly speaking, an accepted product and a big seller." *Paine, Webber,* 587 F.Supp. at 1116. Nevertheless, it is obvious that separate trials in the present case would require plaintiff to present at least a limited amount of evidence twice; and notwithstanding defendant's representations to the contrary, although a minor evidentiary overlap may not strongly militate against bifurcation, it certainly does not favor bifurcation.

Moreover, defendant's proposed stipulation fails to remedy the potential overlap problem in this case. Defendant has stated that it is willing to stipulate to the commercial success of the allegedly infringing product; however, it is apparently not prepared to stipulate that the success of that product is attributable to the "token ring" contained therein.

The token ring is the only aspect of defendant's product which plaintiff alleges infringes its patent. As plaintiff points out, it is the commercial success of the patented invention that is the relevant secondary consideration in determining obviousness. *Paine, Webber,* 587 F.Supp. at 1116. For this reason, defendant's proposed stipulation will not be especially helpful to plaintiff in its efforts to show liability, as it does not clearly establish that defendant's commercial success is due to defendant's allegedly infringing embodiment of the token ring rather than to other aspects of defendant's product.

Plaintiff next points out that courts are less likely to grant bifurcation when the issues to be decided are not particularly

---

2. If the Court were to grant defendant's motion for bifurcation, evidence of commercial success would indeed appear to be admissible at the liability phase. Moreover, the Federal Circuit has ruled that a patentee need not show that it is entitled to an accounting in order to be permitted to discover records and testimony regarding an alleged infringer's sales. *Truswal Systems Corp. v. Hydro–Air Engineering, Inc.,* 813 F.2d 1207, 1212 (Fed.Cir.1987).

complex and a single trial on all issues thus does not carry with it a significant risk that the trier of fact will be confused. *Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F.Supp. 1485, 1492 (D.Del.1985). The burden of showing a significant risk of confusion is on the party requesting bifurcation. That burden is more difficult to meet where, as here, the case is to be tried without a jury. *Id.*

Neither party disputes the assertion that the technology involved in this case is very complex. However, it would be disingenuous of either party to argue that a significant number of novel or complex legal issues have been raised thus far. The Court takes judicial notice of the fact that counsel for both parties have other patent cases currently pending in this district with nearly identical motions outstanding. Furthermore, the most complicated factual matters in this case relate to the liability issue and would therefore be raised even if defendant's motion were granted. The Court therefore finds that defendants have failed to show that a substantial risk of confusion will result if all issues in this case are decided at a single trial.

Perhaps the most important consideration for a court ruling on a motion to bifurcate is whether separate trials would unduly prejudice the non-moving party. *H.B. Fuller*, 595 F.Supp. at 625. As plaintiff has correctly indicated, prejudice under these circumstances may simply amount to unfair delay of the final disposition of the matter. *Id.* Applying this definition of prejudice, the Court finds that separate trials here might very well prejudice plaintiff.

In addition, considering the attorneys' behavior in this case so far, it appears inevitable that, if the motion to bifurcate were granted, both the discovery process and the liability trial would be repeatedly delayed by disputes regarding the discoverability or admissibility of evidence. Moreover, the foreseeable appeal of the outcome of the liability trial might further delay the trial on damages. Finally, while the Court

is reluctant to ascribe bad faith to defendants in filing this motion, its timing does appear to be conspicuously fortuitous—defendant filed this motion on the eve of the date its responses to plaintiff's interrogatories were due and defendant has not since that time responded to discovery on damages. Under the circumstances, a delay such as we suggest above would clearly be unfair to plaintiff.

Speculation aside, defendant appears to be able to point to little in the way of convenience or judicial economy to support its motion. It is undeniable that, if the Court were to bifurcate the trial and defendants were to prevail on the infringement issue, there would be no trial on damages; however, if defendant were to lose on liability, the two trials would end up taking considerably more time than would have been required to reach the same outcome with a single trial. Given the very limited benefit to be derived from bifurcation in this case, the Court is simply not willing to take the gamble that defendant recommends. Defendant's motion will thus be denied.[3]

## II. DEFENDANT'S MOTION TO TRANSFER.

■ In order to succeed on its motion to transfer this action, defendant must satisfy the requirements of 28 U.S.C. section 1404(a). As a threshold matter, transfer may only be ordered when the action "might have been brought" in the transferee district in the first place. 28 U.S.C. § 1404(a). This action could have been brought in the district court for the district of Massachusetts, since defendant has its principal place of business there. *Pall Corp. v. Bentley Laboratories, Inc.*, 523 F.Supp. 450, 451 (D.Del.1981). In other words, at the time of commencement of this action, the two requirements of section 1404(a) were satisfied: venue would have been proper in the transferee district, and the transferee court possessed the power to assert personal jurisdiction over the defendant. *Van Dusen v. Barrack*, 376 U.S.

---

**3.** Implicit in the Court's denial of defendant's motion to bifurcate is a refusal to grant defendant's request for a stay of discovery on the issue of damages.

**1436**

612, 616–17, 84 S.Ct. 805, 808–809, 11 L.Ed. 2d 945 (1964).[4] Accordingly, this suit "might have been brought" in the District of Massachusetts, and this Court has the power to order a transfer to that jurisdiction.

Section 1404(a) also requires that a transfer be "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). These considerations comprise the discretion left to a court deciding a motion to transfer. Guiding the Court in its balancing of these considerations is the standard established by the Third Circuit in *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir.) *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The *Shutte* court emphasized that "a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request." *Shutte,* 431 F.2d at 25. This Court has consistently shown deference for plaintiffs' forum choices. *See, e.g., Krupp Int., Inc. v. Yarn Indus., Inc.,* 615 F.Supp. 1103, 1106 (D.Del.1985). Thus, the plaintiff's decision to have this case tried by this Court should prevail unless defendant can show that the balance of convenience or the interest of justice strongly favors a transfer. *Id.* For the reasons stated below, the Court finds that defendant has made no such showing.

■ Defendant argues correctly that plaintiff's choice of forum is to be accorded less respect where that forum is not plaintiff's "home turf." *Davis Constructors v. Dartco Manufacturing, Inc.,* 668 F.Supp. 380, 384 (D.Del.1987). This is especially true where the chosen forum is merely the statutory home state of the defendant corporation. *Quandt v. Beech Aircraft Corp.,* 317 F.Supp. 1009, 1012 (D.Del.1970). However, defendant appears to have misinterpreted the home turf exception.

The home turf exception does not apply to a plaintiff who has selected a venue that is connected with the subject matter of the lawsuit. *See, e.g., Boroughs Wellcome Co. v. Giant Foods,* 392 F.Supp. 761, 763 (D.Del.1975). According to plaintiff, at least four or five of the allegedly infringing acts committed by defendant occurred in Delaware, when defendants' employees installed computer equipment at the offices of its customers in this state. Guadagno Dep.Tr. 46. Since Delaware is related to the subject matter of this suit, the home turf exception is inapplicable, and plaintiff's forum choice is entitled to the usual degree of deference. *Id.*[5]

In an attempt to overcome the deference shown to plaintiff's choice of forum, defendant declares that it will be severely inconvenienced by having to defend this case in Delaware, as all of its employees with sufficient familiarity to be helpful in this litigation, along with all relevant records, are located in Massachusetts. In light of the infringing activities which plaintiff alleges have been committed in this district, defendant's declaration is hard to believe. Plaintiff has persuasively argued that each alleged infringement occurs not at defendant's headquarters, but at the offices of defendant's customers, when employees

**4.** The district of Massachusetts would have been a proper venue for plaintiff to file this suit. As stated at 28 U.S.C. section 1400(b): "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Plaintiff does not dispute that on the day this suit was filed, defendant's principal place of business was in Chelmsford, Massachusetts. Thus, defendant is considered a resident of Massachusetts for venue purposes. 28 U.S.C. § 1391(c).

Furthermore, the Massachusetts court had personal jurisdiction over defendant at the commencement of this action, based on defendant's "residence" in that state. *See Pall,* 523 F.Supp. at 451.

**5.** Defendant has not only misinterpreted the home turf exception, but appears to have overestimated it, as well. "Defendant's burden of proof is no less when plaintiff is litigating away from its home turf. It is simply easier for defendant to meet that burden in such situations." *General Instrument Corp. v. Mostek Corp.,* 417 F.Supp 821, 823 (D.Del.1976). Even in a case where a plaintiff is away from its home turf, its choice of forum is entitled to deference, and should not be upset unless the defendant can "show that the balance of convenience *strongly* favors transfer." *Read Corp. v. Portec, Inc.,* Civil Action No. 88–29–JRR, slip op. at p. 2 (D.Del. September 14, 1988) [1988 WL 125128] (citations omitted).

from defendant's field offices, such as the one in King of Prussia, link equipment into customers' computer networks.

While there may be other sites attributable to defendant's alleged misconduct, this district appears to be at least one "center of gravity" of this lawsuit, since some of defendant's customers are located in Delaware. *See Sports Eye, Inc. v. Daily Racing Form, Inc.,* 565 F.Supp. 634, 638 (D.Del.1983). Accordingly, at least some relevant documents and proposed witnesses will undoubtedly be located in this area, and neither party will be unduly prejudiced if the case is tried here. *Id.*[6]

Furthermore, given the modern document production technology available today and the fairly liberal discovery rules in force in federal courts, there is no reason why the forum in which a case is litigated must determine where pretrial discovery and document production takes place. *See, e.g., Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.,* Civil Action No. 76–37, slip op. at p. 4 (D.Del. November 23, 1977). It can be expected that all necessary documents will have been produced long before trial. *Id.* And there is no reason to expect that any problems will arise from the use of photocopies during trial. *Id.* at 5. Thus, during the pretrial period, trying this case in Wilmington should be about as convenient for defendant as trying it in Massachusetts.

Finally, the defendant's own delay in filing this motion serves as evidence that trial in this district would not be particularly inconvenient. *McFarlin v. Alcoa Steamship Co.,* 210 F.Supp. 793, 795–96 (E.D.Pa. 1962). The delay is particularly significant here, as there is no claim that the reason for the newly-alleged inconvenience has recently arisen. *Id.* The Court therefore finds that defendant has failed to show that it would suffer significant prejudice if forced to defend this litigation here.

The Court also finds that defendant has failed to demonstrate that trial in Delaware would significantly inconvenience the witnesses it plans to call at trial. This Court has already stated that:

> [w]hen inconvenience to witnesses is alleged some information should be put in the record as to how many witnesses are involved, the materiality of these witnesses to the case, how far away these witnesses are from the transferee Court as compared with this Court, how long they will be required at the trial, and whether they are persons whose time is vitally important to the defendant's business.

*Aetna Casualty & Sur. Co. v. Singer–General Precision, Inc.,* 323 F.Supp. 1141, 1144 (D.Del.1971). At the time this motion was filed, defendant had not identified most of its witnesses with the degree of specificity required in *Aetna;* in fact, defendant had identified only two witnesses by name. Of those two, Mr. Vande Sande lives in Washington, which is closer to Wilmington than Boston, and Mr. Soderblom visits Washington frequently.[7] Defendant

---

**6.** Even if some of defendant's employees are forced to come to Wilmington from the Boston area during trial, defendant will not suffer a substantial inconvenience, at least in comparison to the hardship plaintiff would suffer if forced to litigate in Massachusetts. An argument similar to defendant's persuaded this Court to grant defendant's motion to transfer in *Scott Paper Co. v. Faucet Queens, Inc.,* Civil Action No. 86–493–CMW (D.Del. January 14, 1987) [1987 WL 28488]. However, in that case the defendant was a small Chicago corporation with only 20 employees, moving for transfer from Wilmington to Chicago. The decision to transfer was based largely on the finding that the absence of a few employees during trial would impose a severe burden on defendant, but would have comparatively little effect on a company as large as Scott Paper. *Id.,* slip op. at pp. 4–5. In light of the relative sizes of the two corporate parties in this case, and the fact that trial in Boston would interrupt Mr. Soderblom's licensing activities in Washington, the Court concludes that a different result is warranted here.

**7.** In its Reply Brief, defendant correctly points out that "the convenience of counsel is irrelevant to the merits of a Motion to Transfer." Defendant's Reply Brief at 5–6 (citing *Solomon v. Continental Life Insurance Co.,* 472 F.2d 1043, 1047 (3d Cir.1973); *Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 146 n. 18 (D.Del.1985); *General Electric v. Westinghouse Electric Corp.,* 294 F.Supp. 36, 37 (D.Del.1968)). Thus, at the time this motion was filed, defendant had effectively identified only one witness by name.

also alluded to fifteen unnamed employees and two or three unnamed expert witnesses living in the Massachusetts area at that time, but their interests should be given little or no weight in the Court's consideration of relative inconvenience, since their description at that time was far too vague when judged by the standard set out in *Aetna.*

Appended to its Reply Memorandum in Support of its Motion to Transfer defendant has included a more complete listing of its proposed fact witnesses, along with their names, addresses—largely in the Boston area—and anticipated testimony. Defendant contends that this enhanced list cures any *Aetna* problems with the original and should therefore persuade the Court to grant its motion to transfer on the basis of witness inconvenience.

However, in straightforward patent cases such as this one, this Court has been skeptical of the parties' purported need to call a large number of fact witnesses. Accordingly, we have been reluctant to attach much significance to such lengthy lists when considering a motion to transfer. *See, e.g., Cosden Oil,* Civil Action No. 76–37, slip op. at p. 5 ("the Court is unwilling to anticipate a problem which past experience suggests is unlikely to arise."). Since defendant has still not named its proposed expert witnesses, all of whom, defendant asserts, live in the Boston area, their convenience also cannot be given much consideration.[8]

Transfer motions in large patent cases depend far more heavily on the third factor enumerated in section 1404(a), the interest of justice, than on considerations of party or witness convenience. *See Ziegler v. Dart Industries, Inc.,* 383 F.Supp. 362, 364 (D.Del.1974). Courts typically examine four criteria in determining where the interest of justice lies. *Minstar, Inc. v. Laborde,* 626 F.Supp. 142, 147 (D.Del.1985).

In the present case, analysis of these criteria leads the Court to the conclusion that defendant's motion should be denied.

One important consideration in determining which venue is favored by the interest of justice is the "economic and efficient utilization of judicial resources ..." *Minstar,* 626 F.Supp. at 147. Judicial economy favors the retention of the present case since this Court has already become involved with substantive aspects of the matter. The Court has not only begun to familiarize itself with the case but has also demonstrated a willingness to conduct conferences and hearings on short notice (e.g., the preliminary injunction hearing held at defendant's request on December 14, 1988).

A second consideration in determining whether the interest of justice warrants a transfer is the effect transfer would have on the cost of the litigation to the parties. *Minstar,* 626 F.Supp. at 148. Legal fees appear to be the major expense for both parties in this action and will no doubt be high regardless of where the action is tried. Moreover, this Court has held that the cost of travel and accommodations for the parties and counsel is not a particularity important factor in weighing litigation costs. *Magee v. Essex–Tec Corp.,* 704 F.Supp. 543, 550 (D.Del.1988) (citations omitted). Since relevant documents and witnesses would appear to be located close to both Massachusetts and Delaware, the Court finds that no aggregate savings would arise from a transfer.

Access to proof and the availability of compulsory process are the third and fourth considerations in the interest of justice calculus. *Minstar,* 626 F.Supp. at 147. Defendant asserts that the Massachusetts court has subpoena power over more of the documents and witnesses it wishes to call at trial than this Court has; however, since most of the witnesses that have been referred to by defendant are its own employ-

8. The parties have accused one another of identifying proposed witnesses close to their desired forums as an afterthought, solely to support their forum selection. Given the timing of these identifications—plaintiff also identified some of its witnesses belatedly—it would appear that these accusations have some merit. In any event, the skeptical approach recommended in *Cosden* suggests that witness convenience should be given only limited weight. *See also Ziegler v. Dart Industries, Inc.,* 383 F.Supp. 362, 364 (D.Del.1974). Thus, this factor does not lend support to defendant's motion to transfer.

ees, defendant can compel their presence at trial regardless of this Court's lack of subpoena power. *Mayer v. Development Corp. of America,* 396 F.Supp. 917, 934 n. 28 (D.Del.1975). Most of those who are not presently employed by defendant are former employees who will presumably testify voluntarily. Furthermore, any documents defendant wishes to use at trial will have been produced by plaintiff and marked as exhibits well before trial. In fact, defendant concedes that most of the witnesses it plans to call at trial are its own employees, former employees, or former counsel. Defendant's Reply Brief at 4. Plaintiff, on the other hand, has stated that it plans to call employees of defendant's King of Prussia office as witnesses. Obviously, these proposed witnesses are not within plaintiff's control. Thus, to the extent that access to proof and amenability to compulsory process are a relevant considerations in this case, that support trial of the case in Delaware, where plaintiffs' witnesses can be subpoenaed.[9]

Three of the four considerations comprising the interest of justice calculus favor denial of defendant's motion to transfer. The other one is essentially neutral. Clearly defendant has not demonstrated circumstances which would lead the Court to disregard plaintiff's choice of forum. In light of the foregoing analysis of the interests of justice and consideration of the convenience of the parties and witnesses, the Court will deny defendant's motion to transfer.

## III. PLAINTIFF'S MOTION TO COMPEL

Plaintiff has filed a motion to compel pursuant to Fed.R.Civ.P. 37(a), asking this Court to order defendant to answer its interrogatories properly. Plaintiff asserts that defendant has failed to adequately respond to many of its interrogatories. Specifically, plaintiff states that defendant's answers ignore numerous specific inquiries in its interrogatories, fail to properly identify documents which defendant claims are privileged, and, in some instances, improperly assert attorney-client and work product protection. Plaintiff has also moved the Court to award it sanctions for its expenses in seeking this order. That motion is treated in Section V of this Opinion.

Defendant has refused to respond to a number of plaintiff's interrogatories on the basis of attorney-client privilege or work product protection. Without addressing the merits of defendant's claims of privilege, plaintiff correctly points out that defendant's responses in connection with those claims are incomplete.[10]

■ When responding to an interrogatory, claims of attorney-client privilege and work product protection do not excuse a party from specifically identifying the allegedly privileged item. *Scovill Manufacturing Co. v. Sunbeam Corp.,* 61 F.R.D. 598, 603 (D.Del.1973). As a matter of fact, this Court has stated that a proper claim of attorney-client privilege "requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality." *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88, 94 (D.Del.1974). Similarly, a party asserting work product protection must "identify the withheld documents with sufficient particularly that the opposing counsel can intelligently argue that the privilege ought not to apply." *Petz v. Ethan Allen, Inc.,* 113 F.R.D. 494, 497 (D.Conn.1985).

■ Viewing defendant's responses to plaintiff's interrogatories as charitably as possible, it is still apparent that the minimum standards of particularity for an assertion of privilege have not been met. Illustrative is defendant's response to plaintiff's interrogatory number 21: "Apol-

---

**9.** This Court has the power to subpoena employees of defendant's King of Prussia office even if they are not present in this district, because King of Prussia is within 100 miles of this courthouse. *See* Fed.R.Civ.P. 45(e)(1).

**10.** Defendant has claimed, in its responses, that the attorney-client privilege and/or the work product doctrine applies to the documents requested in interrogatories 16, 21, 22(b), 24, 25(a) and (b), 26, and 31, among others. Plaintiff seeks an Order compelling more complete responses to each of these interrogatories.

lo objects to Interrogatory No. 21 as calling for documents which are subject to the attorney client privilege and/or the work product doctrine." Defendant's only justification for its failure to specifically designate the purportedly privileged documents is an alleged failure by plaintiff to adequately respond to defendant's interrogatories. However, "unclean hands" arguments have no relevance to a motion to compel. Because defendant's responses claiming the privilege are evasive and incomplete, they are the equivalent of a failure to answer for the purposes of a motion to compel. Fed.R.Civ.P. 37(a)(3). Accordingly, defendant will be ordered to fully respond to these interrogatories.

In addition to its claims of privilege, defendant relies on the option set out in Fed.R.Civ.P. 33(c) to respond with documents as justification for some of its incomplete responses to plaintiff's interrogatories.[11] Here again, defendant is abusing a discovery privilege to frustrate plaintiff's legitimate discovery attempts.

■ In appropriate situations, Rule 33(c) gives a party served with an interrogatory the option, within certain limitations, to respond by specifying records from which the answer may be derived and providing the discovering party with an opportunity to inspect those records. To be a proper response under the Rule, such a specification must be sufficiently detailed "to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answers may be obtained." Fed.R.Civ.P. 33(c). This final sentence was added to make it clear that the party served has a duty to specify the category and location of those records which contain the responses to the inter-

rogatory. Fed.R.Civ.P. 33(c), *Notes of Advisory Committee on Rules,* 1980 Amendments.

It is clear that defendant's documentary responses do not comply with the minimum requirements of Rule 33(c). For example, in its supplemental response to plaintiff's interrogatory number 21, defendant states: "The requested documents are identified in Apollo's privileged document list or have been produced pursuant to Fed.R.Civ.P. 33(c)."[12] Defendant's response says nothing about the category or location of those records. Defendant's responses are thus equivalent to a failure to answer. Fed.R.Civ.P. 37(a)(3);[13] and defendant will be ordered to respond properly to these interrogatories.

■ In addition to its broad-based objections to defendant's answers, plaintiff has made more particular complaints concerning defendant's answers to seven of its interrogatories. For example, in interrogatory 1, plaintiff asked for information on all token rings "made, used, sold, or leased" by defendant over a specified period. Defendant gave an incomplete answer in reliance on Rule 33(c) and voiced its objection to the interrogatory on the ground that it asked for technology still in the developmental stages.

Plaintiff has conceded it is not asking for information on defendant's experimental technology. However, there is no basis for defendant's position that simply because it has not sold a product, it need not produce information relating to that product during discovery. Plaintiff correctly points out that the statutory definition of patent infringement explicitly encompasses products made or used, yet never sold.[14] Accordingly, defendant will be ordered to answer this

---

**11.** Defendant alleges that it has fully responded to interrogatories 16, 22(b), 24, 25(a) and (b), 26 and 31. Plaintiff disputes this and seeks an Order compelling a complete response to each of these interrogatories.

**12.** Note that this supplemental response does not cure the failure of defendant's original response to this interrogatory to support a claim of privilege: while defendant's withheld document list includes descriptions of all of the documents from which a complete answer to a

given interrogatory could be derived, it does not indicate which of those documents are responsive to the interrogatory.

**13.** In light of the conclusion that the answers examined thus far are evasive or incomplete, it is not necessary for the Court to deal at length with the additional reasons why plaintiff asserts they are inadequate.

**14.** *See* 35 U.S.C.A. § 271(a) (1984).

interrogatory properly including providing information on token rings used in defendant's headquarters equipment.

In interrogatory 11, plaintiff requested defendant to identify any prior art which formed the basis of one of defendant's invalidity claims. Although plaintiff maintains that defendant's response to this interrogatory was too vague to be proper, plaintiff suggests no standard for evaluating responses to such items. Furthermore, defendant contends that its failure to answer this interrogatory at an earlier date is attributable to plaintiff's delay in relinquishing two interference files. And defendant assures the Court that it is aware of its duty to supplement if it decides to use more documents. Thus, defendant shall be ordered to do no more at the present time.

■ Interrogatories 27 and 28(a) requested information on the issue of defendant's profitability. Defendant objected to both interrogatories, arguing that it should not have to respond to interrogatories on the issue of damages unless and until the Court has decided whether to stay discovery on the issue of damages. Furthermore, defendant contends, since it is willing to stipulate to its own commercial success, such information would be unnecessary, not to mention burdensome.

Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all. In any event, since this Court has decided to deny defendant's request to stay, defendant will be ordered to respond to these interrogatories properly.[15]

■ Interrogatory 29 requests identification by number of all patents and patent applications owned by defendant, as well as all licenses it has purchased or issued. Here again, defendant objects because it has requested a stay of discovery on damages. This argument is no more persuasive here than it was in connection with the other interrogatories. However, defendant also contends that interrogatory 29 is overbroad, i.e., that plaintiff has no right to see all Apollo patent applications, only those that pertain to this litigation. This is certainly a valid objection. An interrogatory this broadly worded amounts to little more than a fishing expedition. The Court will therefore not order defendant to respond except as to patents, patent applications and licenses pertaining to this litigation.

■ Defendant objects to interrogatory 44 for three reasons: there has been no formal '948 patent claim asserted; defendant should not have to answer while its request for a stay is *sub judice;* and defendant is willing to stipulate to its commercial success. All three of these arguments have already been rejected. Given the fact that the subject matter of interrogatory 44—installation of allegedly infringing token rings—is as relevant as that of the other interrogatories analyzed thus far, the Court concludes that defendant has improperly refused to answer and will be ordered to do so.

■ Finally, interrogatory 46 asks defendant for information regarding any doc-

---

15. Defendant cites *Slater Electric, Inc. v. Indian Head, Inc.,* 38 Fed.R.Serv.2d 488, 490–91 (S.D.N.Y.1983), for the proposition that when one party stipulates as to its commercial success, a court will stay discovery on the damages issue. However, in *Slater,* both sides had already exchanged specific financial information regarding profitability, so the stipulation was irrelevant for discovery purposes. *Id.*

Defendant also points to plaintiff's failure to formally assert one or more claims of the '948 patent against defendant's products in support of its argument that any documents relating to damages incurred prior to the date of the reissue are irrelevant. Defendant appears to ignore the fact that the original Complaint filed in this suit contained just such a formal assertion. Furthermore, defendant has known since last June, when Mr. Soderblom was deposed, at least some of the claims of the '948 patent which plaintiff contends are infringed (claims 1, 2, 5, 10, and 22). *See* Soderblom Dep. Tr. at 256–57, 264–67, 279, and 285.

uments relating to this litigation that have been destroyed. As defendant states in its Brief in Opposition to Willemijn's Motion to Compel, defendant has answered each subpart of this interrogatory in the negative. While plaintiff seeks reassurances in the form of supplementation, there does not appear to be any reason to doubt defendant's honesty in this regard. Thus, supplementation is unnecessary, and plaintiff's motion with regard to this interrogatory will be denied.

## IV. DEFENDANT'S MOTION TO COMPEL

Defendant has also filed a Motion to Compel pursuant to Fed.R.Civ.P. 37(a). The basis of this motion is defendant's allegation that plaintiff has improperly withheld hundreds of documents, relying on spurious claims of privilege. Defendant has divided the documents withheld by plaintiff into the following five categories for the purposes of its motion:

Category I: Transmittal letters and other documents for which there is no claim of privilege;

Category II: Documents involving Mr. Graham Coles;

Category III: Documents involving foreign patent agents but which do not relate to the prosecution of a patent application in the foreign agent's country;

Category IV: Documents involving foreign patent agents prosecuting patents in their native countries; and

Category V: Documents for which plaintiff has failed to meet its burden to prove privilege, including technical documents to or from non-lawyer consultants.

Defendant's Brief in Support of its Motion to Compel Brief at 1. In the interests of convenience and clarity, the Court will address these categories *seriatim* in ruling on defendant's motion to compel.[16]

In order to justify its refusal to produce the documents requested by defendant, plaintiff must show that the withheld documents are protected under the attorney-client privilege, the work product doctrine, or both. As recognized by this Court, the attorney-client privilege applies only if:

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication related to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing some crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 144 (D.Del.1977) (citations omitted).

The work product doctrine, on the other hand, protects documents prepared in anticipation of litigation or for trial, by or for a party or its representative. *Hercules*, 434 F.Supp. at 150. The former federal common law rule has been codified at Fed.R. Civ.P. 26(b)(3). The Rule states, in relevant part: "the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." As interpreted by this Court, the doctrine protects "memoranda, recorded mental impressions, synopses of witness statements, drafts of documents, etc., prepared by an attorney

---

16. Plaintiff alleges that defendant violated Local Rule of Civil Practice 3.1[D] by failing to raise a number of its objections earlier in the pretrial proceedings. The Rule requires, with respect to motions relating to discovery, that the movant's attorney attach an affidavit "detailing the date, time spent, and method of communication in attempting to reach an agreement on the subject of the motion with the other party or parties,

and that certificate shall indicate if the motion is opposed or unopposed."

Defendant calls the Court's attention to correspondence dating back to June 23, 1988, objecting to plaintiff's withholding of documents. Defendant maintains that these letters satisfy the requirements of Rule 3.1[D]. Having examined the letters, the Court finds that they comport with the broad language of the Rule.

'with an eye to litigation.'" *Hercules*, 434 F.Supp. at 150.

As noted in Section I of this Opinion, a party asserting the privilege must make a proper showing that the criteria set out by the this Court in *Hercules* have been met. *International Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 93 (D.Del.1974). Such a showing is usually by affidavit, containing information such as that contained in the withheld document list provided for defendant by plaintiff in this case. *Id.* *See* Appendix A to defendant's Brief. Similarly, a party asserting work product protection must identify the withheld documents with sufficient particularity to enable opposing counsel to intelligently argue that the protection ought not to apply. *Petz*, 113 F.R.D. at 497.

Unlike plaintiff's motion to compel, defendant's motion does not raise objections to the identifications given in plaintiff's withheld document list; defendant's motion goes to the merits of plaintiff's claims of privilege and protection. For example, category I consists largely of documents which defendant refers to simply as "transmittal letters," based on the description given in plaintiff's withheld document list.[17] If this portrayal is accurate, then these documents are not protected by the attorney-client privilege unless they contain legal opinions or requests for legal advice. *Hercules*, 434 F.Supp. at 145. Defendant contends that the documents contain no such information, and that they should therefore be ordered produced.

Plaintiff maintains that the documents in category I have been erroneously characterized by defendant, i.e., that some of them are not transmittal letters at all, and that those that are transmittal letters deal with privileged legal issues. Plaintiff

claims that all of these letters are protected by the attorney-client privilege and that some are protected by both that privilege and the work product doctrine.

 It is clear that some of the descriptions supplied by the plaintiff in its withheld document list are facially insufficient to support a finding that either form of protection is merited.[18] In its Brief, plaintiff now seeks to augment or correct those descriptions. If permitted to do so, the documents as newly described would probably be found to be privileged. The Court must therefore decide whether to hold plaintiff to the representations made in its list or permit it to modify them in response to defendant's motion.

This Court has consistently emphasized that the party asserting the attorney-client privilege bears the burden of proof. *See, e.g., Fibreboard*, 63 F.R.D. at 94. Before compiling its withheld document list, plaintiff could easily have ascertained the standard of particularity expected by this Court and could have met that standard. Allowing it to do so now would encourage dilatory discovery practices.

Furthermore, the descriptions of these transmittal letters contrast sharply with those of other documents on plaintiff's list. For example, plaintiff described withheld document number 63(c) not merely as a transmittal letter, but as a transmittal letter which specifically requested "legal advice, comments, and instructions," thus entitling the letter to protection under the attorney-client privilege. This contrast leads the Court to the conclusion that plaintiff knew how to characterize a document correctly when it compiled its list and seeks to make changes now only to escape producing the documents requested. Plaintiff

---

**17.** Withheld Documents Number 2, 3, 60, 63(c), 72(b), 151, 526, 528. *See* Appendix A to defendant's Brief. Plaintiff asserts that the attorney-client privilege applies to all of these documents, and that the work product doctrine also applies to Nos. 72(b) and 526. Documents number 235, 7, 413, 468, and 556 were also placed in category I, but are not characterized as transmittal letters by defendant.

**18.** As an example of the paucity of information in the descriptions given in plaintiff's withheld document list, documents number 2 and 3 are described by plaintiff simply as transmittal letters; similarly, withheld document 151 is described as a letter acknowledging receipt of comments, the equivalent of a transmittal letter for purposes of a motion to compel. *Hercules*, 434 F.Supp. at 145. Since no further descriptions were given, these documents would not appear to be privileged. *Id.*

will not be permitted at this time to embellish insufficient descriptions to avoid complying with defendant's legitimate discovery requests. Withheld documents 2, 3, and 151 will thus be ordered produced.

■ Withheld documents 72(b), 526, and 528 appear to be precisely the type of items protected by both the attorney-client privilege and the work product doctrine, since all three allegedly contain legal advice from counsel to plaintiff during the course of preparation for this trial. *See United Coal Companies v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir.1988). Because plaintiff has made out a facially plausible claim of privilege, these documents need not be produced.[19]

Defendant and plaintiff have agreed that withheld documents number 7 and 434, which are identical, are irrelevant to this case. Accordingly, their production will not be compelled.

As for document number 63(c), it will be considered as part of category II, along with the other documents involving Mr. Coles, since he was its author. For similar reasons, number 60 will be considered in category II, as well.

The final batch of withheld documents in Category I, documents number 413, 468, and 556, were all prepared by Mr. Farber, an advisor to Mr. Vande Sande, plaintiff's attorney. It is the settled law of this Circuit that work product protection extends to documents prepared by non-attorneys acting at an attorney's request. *United Coal*, 839 F.2d at 966. Since these documents were all prepared at Vande Sande's request, in anticipation of this litigation, they would appear to be entitled to protection under the work product doctrine and need not be produced.

Category II consists of hundreds of pages of documents sent to or received from Mr. Graham Coles and withheld by plaintiff on the basis of the attorney-client privilege.[20] Mr. Coles is a British "patent agent." He has also been referred to as a "patent attorney" by plaintiff in its withheld document list. However, defendant emphasizes, and plaintiff does not dispute, that Coles is not an "attorney" according to the definition of the term employed in the United States.[21]

■ According to federal common law principles, which determine the availability of the attorney-client privilege in patent infringement actions, the applicability of the privilege to communications with foreign (non-attorney) patent agents hinges on the subject matter of those communications. *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1169 (D.S.C.1975); *Chubb Integrated Systems, Ltd. v. National Bank*, 103 F.R.D. 52, 65 (D.D.C. 1984); *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377, 391 (D.D.C.1978). If the communications relate to the prosecution of a patent in the agent's native country and would be privileged under the laws of that country, the attachment of the privilege depends on the laws of that country; in other words, federal courts will apply

19. Plaintiff concedes that withheld document number 235 is not privileged. Number 235 has thus been produced for defendant, along with withheld documents 188, 232(x), 233(x), and 234–36. *See* plaintiff's Brief in Response to Defendant's Motion to Compel at 4 n. 2.

20. According to defendant, the documents relating to Mr. Coles are as follows: 3, 6–10, 11(a)–(b), 12–20, 51(a)–(e), 52–58, 60, 62, 63(a)–(c), 64–69, 70(a)–(b), 71, 72(a)–(c), 73–75, 77, 77, 78, 82–92, 95, 97, 99, 101, 102(a)–(c), 103(a)–(c), 104, 105(a)–(f), 106–110, 114–127, 129, 131–143, 146, 148, 149, 156–163, 165–166, 168, 169, 171–173, 174(a)–(b), 175–179, 180(a)–(b), 181, 183, 184, 187, 189(a)–(b), 191, 192, 194, 195, 196(a)–(b), 197–200, 201(a)–(d), 202, 203, 204(a)–(c), 206–214, 216, 218–220, 222–232, 224(x), 227(x), 229(x), 231(x), 234, 237–251, 252(a)–(d), 253– 255, 261, 263, 266, 268, 271, 276–283, 284(a)–(h), 285–287, 291, 294, 365(a)–(b), 366, 367(a)–(b), 368–370, 375–377, 411–412, 418, 419, 427–431, 433, 434, 451–453, 455–457, 465, 467, 469–474, 477, 478, 480, 484, 486, 502–507, 510, 526–529, 534, 545–548, 550–554, 558–567, 570, 572, 578–583, 585, 591–600, 610, 613, 616.

21. There appears to be nothing improper in plaintiff's portrayal of Mr. Coles as a Patent attorney: "[v]irtually all *patent attorneys* in Europe have *only* a technical or scientific background and, with rare exceptions, have no legal training and are not members of the bar." Note, *The European Patent Attorney Qualifying Examination, An American Perspective*, 46 J.Pat. Off.Soc'y 47, 51 (Jan.1987) (emphasis in original).

principals of comity. *Id.* However, if the communications "touch base" with the United States, U.S. privilege law applies. *Id.*

In *Chubb,* the court held that communications by a foreign patent agent—Graham Coles, coincidentally—relating to the prosecution of a United States patent for another corporation were not protected by the attorney-client privilege. *Chubb,* 103 F.R.D. at 65. *See also Duplan,* 397 F.Supp. at 1169 ("no communications from patent agents, American or foreign, are subject to the attorney-client privilege in the United States.") Defendant argues that *Chubb* is on all fours with the present case and thus should govern this Court's analysis. However, plaintiff has shown that significant distinctions exist between the function Coles performed for Chubb and the functions he performed for plaintiff.

■■■ One function that Coles performed for plaintiff that he apparently did not perform for Chubb was that of British patent agent. In this capacity, Coles assisted plaintiff in formulating licensing and enforcement policies for its patents in Europe, and advised plaintiff of possible infringements. *See* Coles Aff. at 9; Soderblom Aff. at 9. Coles performed these activities pursuant to plaintiff's instructions. *Id.* While they may have involved interaction with citizens of other European countries, it appears that these duties never touched base with the United States. Thus, even though Coles' activities did not relate solely to his native (British) patent office, there is no apparent justification for applying United States privilege law to the withheld documents relating to those activities, since those documents have no relation to this country at all. *Chubb,* 103 F.R.D. at 65.[22] The documents will therefore be ordered produced for examination

*in camera,* to ensure that they do not relate to the U.S. and that they are in fact privileged.

■■■ The other function Coles performed for plaintiff is more analogous to his role as described in *Chubb.* Coles helped plaintiff's United States patent counsel in reissue patent proceedings and in the formulation of licensing and enforcement strategies for use in the United States and Japan. Coles Aff. at 6–7; Soderblom Aff. at 7–8; Coles Aff. at 6, 7. These activities required frequent communications between Coles and Soderblom in England and between Soderblom, Coles, and Vande Sande. These communications comprise the remainder of the category II documents.

The *Chubb* court rejected the argument that communications similar to these were privileged. *Chubb,* 103 F.R.D. at 65. In that case, the plaintiff, Chubb, had argued that the privilege applied on the theory that Coles had been acting as an employee of Chubb and that Coles' communications with Chubb's U.S. counsel (Mr. Vande Sande) were thus essentially communications between an attorney and his client. The *Chubb* court rejected this argument and with it the rule of *Foseco International, Ltd. v. Fireline, Inc.,* 546 F.Supp. 22 (N.D.Ohio 1982) (attorney-client privilege applied to similar communications, based on such a "constructive employee" theory). *Id.* at 25.

In the present case, plaintiff has not relied on a constructive employee theory. Thus, neither *Chubb* nor *Foseco* is on point. Instead, plaintiff contends that Coles was acting under Mr. Vande Sande's direction and was thus acting as an agent of the attorney, rather than an employee of the client, for purposes of the privilege.[23]

---

22. The other case defendant cites in support of this argument is equally unpersuasive. In *Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 156 (W.D.N.Y.1982), the court found that a British patent agent had acted as a mere conduit for a Japanese patent agent, transmitting advice to their American client. The court declined to apply the British attorney-client privilege rule, stating: "[t]his type of activity cannot be used to

shield documents from discovery." *Id.* Since there have been no allegations that Coles was merely a conduit for European patent agents' advice, *Detection Systems* is inapposite.

23. Defendant notes that plaintiff is here arguing that Coles was acting as its U.S. counsel's subordinate at the same time Coles was arguing that he was an employee of Chubb in that litigation.

While the distinction may appear formalistic, it is a significant one for purposes of determining whether the privilege applies to the communications between plaintiff, Coles, and Vande Sande.

Under similar circumstances, in *United Coal*, 839 F.2d at 966, the Third Circuit held that the work product doctrine does not apply exclusively to documents containing the mental impressions of an attorney. Limiting the scope of the doctrine, the court stated, would ignore:

> the realities of litigation in our adversary system. One of those realities is that attorneys must often rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect materials prepared by agents for the attorney as well as those prepared by the attorney himself.

*Id.* (quoting *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170–71, 45 L.Ed.2d 141 (1975)).[24]

This Court has held that a non-attorney patent agent, employed in the patent department of a corporation, may qualify as a subordinate of the corporation's attorney, if working at the direction of and under the supervision of that attorney; accordingly, the Court held that the attorney-client privilege applied to communications between the two. *Hercules*, 434 F.Supp. at 146. *Hercules* specifically distinguished patent agents who handle patent matters on an independent basis, such as Mr. Coles; however, it did not hold that independent patent agents could not also be found to be attorneys' subordinates.[25]

The *Hercules* decision left open the issue of the applicability of the attorney-client privilege to communications between an attorney, a client, and an independent patent agent, if that patent agent is working on behalf of and under the direction of the attorney. That is the issue squarely faced by this Court today. Recognition of the realities of litigation and analogous application of the work product doctrine leads us to hold that the attorney-client privilege may encompass documents such as those in category II involving discussions between plaintiff, Coles, and Vande Sande, if Coles was acting under the direction of Vande Sande. Accordingly, these documents will be ordered produced for examination *in camera* to determine if they are protected by such a relationship.

■■■ The withheld documents in category III, all of which relate to foreign patent agents other than Mr. Coles, can be analyzed in much the same manner as some of the Coles documents in category II. Here again, plaintiff argues that the attorney-client privilege applies to such documents and again there is valid (though not controlling) authority so holding.

With respect to the documents in this category which touch base with the United States, defendant contends that *Chubb* requires that this country's attorney-client privilege rule be applied. *Chubb*, 103 F.R.D. at 65. Since the foreign patent agents connected with these documents are not patent attorneys under U.S. law, defendant

---

However, defendant offers no authority for the proposition that the two claims are mutually exclusive. Even if they were mutually exclusive, the *Chubb* court determined that Coles was not a Chubb employee. *Chubb*, 103 F.R.D. at 66.

**24.** Expansion of the attorney-client privilege to protect communications between an attorney's representative and the attorney or the attorney's client is supported by authority from other jurisdictions. *See, e.g., United States v. Kovel*, 296 F.2d 918 (2d Cir.1961); *Daniels v. Hadley Memorial Hospital, et al.*, 68 F.R.D. 583 (D.D.C.1975); *Mendenhall v. Barber–Greene*, 531 F.Supp. 951, 217 USPQ 786 (N.D.Ill.1982); *Congoleum Industries v. G.A.F. Corp.*, 49 F.R.D. 82, 84 (E.D.Pa.

1969); *In re Ampicillin Litigation*, 81 F.R.D. 377, 394 (D.D.C.1978); *Cf. Himmelfarb v. United States*, 175 F.2d 924 (9th Cir.1949). At least one commentator supports such an expansion, as well. *See 2 Weinstein's Evidence* ¶ 503(a)(3)[01].

**25.** By expressly distinguishing between in-house and independent patent agents in *Hercules*, this Court was able to avoid the issue presented in *Duplan*, 397 F.Supp. at 1169, and other cases which held that communications between a client and an independent patent agent are never privileged. *Hercules*, 434 F.Supp. at 146. However, neither this Court, the Federal Circuit, nor the Third Circuit has ever adopted the rule of *Duplan*.

argues, these documents cannot be found to be privileged. *Id.* However, since plaintiff's descriptions of those documents in its withheld document list indicate that the foreign patent agents involved were really only "functionaries," with the "real lawyering" being done by plaintiff's U.S. counsel, the Court finds that "the communication is like that between a lawyer and any non-lawyer who serves under the lawyer's supervision." *Mendenhall*, 531 F.Supp. at 955. The fact that the correspondents were patent agents, or that they were located in Europe, is irrelevant. Thus, for the same reasons that it should be expanded to protect the Coles documents that touch base with the U.S., the attorney-client privilege should be expanded to protect these documents, if the foreign patents agents were indeed acting under the discretion of an American attorney. They will thus be ordered produced for examination *in camera.*[26]

■ As for the rest of the documents in category III, all of them would appear to deal with matters of foreign patent law. For that reason they do not touch base with the United States and comity requires that they be given the same attorney-client privilege protection that they would be given abroad. *Chubb*, 103 F.R.D. at 65. The extent of those privileges must therefore be determined. That issue will be dealt with in the discussion of the category IV documents, where these documents should have been assigned in the first place.[27]

Assuming that all of the documents in category IV were produced by or on behalf of foreign patent agents and relate solely to matters outside the United States, whether and to what extent they are privileged depends entirely on the laws of the countries concerned.[28] For this reason, the Court must now determine whether the laws of the foreign countries involved would extend the attorney-client privilege to them. *Chubb*, 103 F.R.D. at 65.

Plaintiff has provided the Court with authority in the form of United States case

**26.** According to plaintiff, those documents are as follows: 22–47, 297–99, 304, 309–63, 393–95, 459, 460, 514–16, 520–22, and 524.

Plaintiff admits that it accidentally transposed the author and recipient of number 298 in the list it provided to defendant (in reality, plaintiff states, Vande Sande is the author and Bergvall the recipient). This is more understandable (and less conspicuous) than the additions plaintiff sought to make to its transmittal letters in category I, since it will have little effect on whether the privilege applies.

Plaintiff also admits that it mistakenly identified documents number 307 and 308 as relating to plaintiff's U.S. patent when they actually relate to its U.K. patent, and that it mistakenly listed Vande Sande as a recipient of number 307 when no recipient is actually mentioned on the letter. Again, these errors appear innocent and inconsequential.

**27.** The remainder of the documents originally assigned to category III by defendant, organized by country of relevant patent agent, are as follows:

German patent agent: 1, 4, 5, 59, 472, 474–75, 587–90, 601–09.

French patent agent: 7–10, 17–19, 52–54, 56, 64–65, 67, 419, 484.

Japanese patent agent: 260, 265, 267, 269–70, 272–75, 421, 422, 462, 479, 482–83, 485, 487–501, 512, 530–33, 536, 538–44, 549, 555, 569, 571, 573, 575–77, 580, 584, 611–12, 615.

Swedish patent agent: 61, 303, 396–410, 587–90, 601–09.

British patent agent: 1, 2, 4, 5, 50, 71, 76, 76(a), 77(a), 79–81, 83, 93–100, 107, 109, 111–13, 116–19, 122–25, 128–30, 136–41, 144–57, 159, 162–64, 167, 169–73, 176, 179, 180(a)–(b), 181–83, 203, 219, 221–22, 225(x), 227(x), 228, 228(x), 229(x), 230, 230(x), 231(x), 254, 255, 257, 283, 308, 476, 508, 509, 511.

Document number 7, along with the identical number 484, was deemed irrelevant by both parties. *See* category I discussion. Plaintiff claims that document number 50 has nothing to do with a British patent agent, and the identification provided in the list of withheld documents supplied by plaintiff bears this out. Finally, plaintiff states that Coles was not involved with number 225, as defendant has alleged, and the identification in the list bears that out. Thus, these documents would appear to be irrelevant as well, and for that reason will not be ordered produced.

**28.** In addition to those documents re-assigned from category III, category IV contains the following withheld documents, organized by country of origin:

Sweden: 48–50.

South Africa: 188, 232(x), 233(x), 234, 235, 236.

Netherlands: 215, 217, 371–74, 378–86, 388–89.

Japan: 396–99, 401–02, 479, 481.

Austria: 403–10.

As to the South African documents, see category I discussion.

law and legal opinions of foreign attorneys and patent agents to support its position that some form of privilege exists under the laws of the United Kingdom, Sweden, Holland, Japan, Austria, Germany, France, and Canada analogous to that of the United States.[29] Defendant maintains that plaintiff has failed to meet its burden of proving that an applicable privilege exists in any of these foreign jurisdictions.

However, defendant has submitted no authority relating to the quantum of proof necessary to establish the extent of a foreign country's privilege law. Fed.R.Civ.P. 44.1, which covers the problem of establishing the rules of foreign countries, gives courts a great deal of flexibility in determining their content: once foreign law has been invoked by a simple notice of intent, a judge may consider any relevant material in determining its content, including items located through independent research.[30] 1 *Weinstein's Evidence,* ¶ 200[02]. Having read the material submitted by plaintiff, the Court finds that each of these jurisdictions has at least some varying degree of attorney-client privilege, whether it be statutory or common law. Rather than set out findings as to the particulars of each country's law in this Opinion, the Court will order these documents produced for inspection *in camera,* to determine whether or not they would be privileged under the relevant foreign laws In that regard, the parties are directed to provide the Court with further information on the privilege applicable in the countries in question.

■ Finally, defendant argues that the withholding of a number of items in catego-

ry V is wrongful because they contain purely technical information used in completing a patent application, rather than legal advice.[31] *Hercules,* 434 F.Supp. at 147. Plaintiff acknowledges that purely technical documents are not privileged, but states that documents, such as those used primarily as aids in completing patent applications, have already been produced.

What have been properly withheld, plaintiff maintains, are documents which contain some technical information, but have as their primary purpose the furnishing of legal advice to the plaintiff or the solicitation of legal advice from its attorney. The Court finds this description hard to believe, as most of these documents are letters between Mr. Vande Sande and an independent engineer and date back to late 1973, the time that plaintiff's patent was pending. Moreover, the descriptions of these documents given by plaintiff in its list of withheld documents mention only technical, not legal, advice. *See* Appendix A to defendant's Brief.

This Court has stated that:

Only if the attorney is "acting as a lawyer"—giving advice with respect to the legal implications of a proposed course of business—may the privilege be properly invoked ...

The attorney-client privilege does not protect technical information such as the results of research, tests and experiments communicated to the attorney, not calling for a legal opinion or interpretation, but meant primarily for aid in completing a patent application.

---

**29.** According to plaintiff:

The laws of the following countries acknowledge the existence of privilege with regard to communications involving patent agents: U.K. [*Detection Systems, Inc. v. Pittway Corp.,* 96 F.R.D. 152, 220 U.S.P.Q. 716, 718 (W.D.N.Y. 1981); *Mendenhall v. Baxter–Green [Barber–Greene ], supra,* at 788 n. 5]; Sweden (Ex. 3); Austria (Ex. 3); Germany (Ex. 3); France (*Baxter Travenol, supra* ); Canada (*Mendenhall, supra* [531 F.Supp. 951, 217 USPQ 786] at 788 n. 5).

Plaintiff's Brief in Response to Defendant's Motion to Compel at 11 n. 5.

Exhibit numbers refer to attachments to plaintiff's Brief consisting of correspondence between Mr. Vande Sande and foreign attorneys and patent agents.

**30.** Fed.R.Civ.P. 44.1 states:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissable under the Federal Rules of Evidence. The Court's determination shall be treated as a ruling on a question of law.

**31.** Documents 21, 22, 392, 461, and 517.

*Hercules,* 434 F.Supp. at 147 (citations omitted). In light of the descriptions given in plaintiff's withheld document list, these technical documents do not appear to be protected by the privilege and shall be ordered produced.

■ Defendant next objects to plaintiff's use of the work product doctrine to justify withholding a number of documents to or from so-called "technical persons."[32] Defendant states that there is no basis for a finding that any of these documents meets the requirements of the doctrine. This is simply not true. A number of these documents allegedly contain advice provided by an expert to plaintiff's British patent attorney for use in ongoing litigation in that country. If they are as plaintiff describes them, these documents are clearly within even the narrowest construction of the doctrine as set out at Fed.R.Civ.P. 26(b)(3), *See United Coal,* 839 F.2d at 966; thus, they will not be ordered produced for inspection *in camera.*

■ The remainder of these technically-oriented documents involve correspondence between plaintiff's U.S. counsel and technical advisors or expert witnesses retained in connection with this litigation. Such materials are also protected under the work product doctrine as it is construed by the Third Circuit. *Id.*[33] If they conform to plaintiff's description, these documents are privileged. Therefore, they also will not be ordered produced for inspection *in camera.*

■ Defendant employs a catch-all approach in arguing that the remainder of the documents in category V have been improperly withheld, stating simply that the any applicable privilege has been waived and/or not proved. Regarding defendant's waiver argument, since the Court has held that Mr. Coles was a representative of plaintiff's counsel, showing him privileged documents did not effect a waiver of the privilege.

As for the documents involving Mr. Kirkpatrick, numbers 193 and 435, they would appear to be protected work product, since he is identified in plaintiff's withheld document list as one of plaintiff's attorneys and the documents are identified as prepared in anticipation of litigation. *See* Appendix A to defendant's Brief. The same is true for the documents connected with British patent agent Meddle, 226(x) and 233, since they are identified as providing information in connection with British patent litigation. *Id.* These four documents therefore need not be produced.

■ Finally, Defendant lists 46 documents involving plaintiff's U.S. counsel, Mr. Vande Sande, stating that they should be produced, or at least inspected *in camera,* to ensure that they are actually privileged, as plaintiff claims.[34] Plaintiff correctly asserts that documents are not privileged simply because they involve an attorney. *Hercules,* 434 F.Supp. at 147.

If the withheld document is strictly a business communication, the attorney-client privilege does not apply. *Hercules,* 434 F.Supp. at 147. From the descriptions given by plaintiff in its withheld document list, some of the documents in category V appear to be more business-oriented than legal in character. For example, number 259 is described as a "memo to file in connection with potential license agreement." However, some of these documents, as described, are clearly legal in nature and therefore deserve protection. For example, document number 364 is described as a letter "providing legal advice in connection with negotiation of a license agreement . . ." To avoid misapplication of the privi-

**32.** At issue here are the following documents: 128, 130, 152, 154–55, 163, 167, 185, 186, 190, 233, 226(x), 231(x), 256, 413, 415, 417, 436, 525, 556, 185, 256, 416–17, 436, 186, 190, 415, 525.

**33.** The fact that at least one of these documents (number 415) involved the prosecution of plaintiff's reissue patent does not necessarily render the doctrine inapplicable, so long as there was an "eye toward future litigation" at the time it was drafted. *Hercules,* 434 F.Supp. at 152. Giv-

en the fact that document number 415 was drafted in November of 1987, it is entirely likely that this litigation was taken into account.

**34.** Numbers 105(g), 205, 258–59, 262, 264, 288–90, 292–93, 295–96, 300–02, 305–07, 364, 387, 390–91, 414, 420, 423–25, 432, 450, 458, 463–64, 466, 513, 518–19, 523, 535, 537, 557, 568, 574, 586, and 614.

lege, it may be necessary to get a better sense of the "primary purpose" of each document before it can be classified.[35] *Hercules,* 434 F.Supp. at 148. An *in camera* review would therefore be appropriate.[36]

## V. PLAINTIFF'S MOTION FOR SANCTIONS

 As for plaintiff's request that the Court award it sanctions to cover its expenses in bringing this motion, Fed.R.Civ. P. 37(a)(4) authorizes a court to grant reasonable expenses to the moving party if a discovery-related motion is granted or to the non-movant if the motion is denied. In fact, this provision requires that expenses be awarded to the prevailing party unless the conduct of the losing party is found to have been "substantially justified."[37] Rule 37(a)(4), *Notes to Advisory Committee Rules,* 1970 Amendment. The goal of the Rule is to deter the abuse implicit in carrying or forcing discovery disputes into court needlessly. *Id.*

In this case, the memoranda from both sides are replete with accusations of abuses of the discovery process. Furthermore, our decisions on the two motions to compel are mixed, in that neither party was an overall "winner" or "loser." Finally, looked upon charitably, neither party's motion to compel appears to have been made with the intent to harass. Thus the Court will not at this time grant sanctions against either party.

### CONCLUSION

For the reasons stated above, defendant's motion to bifurcate the trial and stay discovery on the issue of damages is de-

nied, as is defendant's motion to transfer this action. The two motions to compel are granted in part and denied in part, as detailed in the body of this Opinion.

---

**35.** In light of this conclusion, it will not be necessary to consider defendant's other arguments for an *in camera* inspection.

**36.** At about the time oral argument was held on the motions dealt with in this decision, defendant filed a supplemental motion giving further reasons why four of the documents in category V should be produced. These documents consist of correspondence between Dr. Arthur I. Larky and Mr. Vande Sande, and a report by Mr. Vande Sande regarding a meeting with Larky. As stated previously in this Opinion,

document number 23 shall be ordered produced for inspection *in camera,* and documents 21, 392, and 517 shall be ordered produced. In light of these determinations, it is not necessary for the Court to address defendant's supplemental claims.

**37.** The test of substantial justification is not defined in the comments to Rule 37. However the Advisory Committee's Notes specifically point out that the Rule as amended is in no way intended to narrow the discretion of the court.